UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
New Albany Division

**FILED**
SEP 17 2021
U.S. DISTRICT COURT
NEW ALBANY, INDIANA

TAMMARA TODD, In her capacity
as Personal Representative for the
Estate of Daniel Todd
2014 Liberty Drive
Jeffersonville, IN 47130

      Plaintiff

v.

Case No.: 4:21-cv-154 TWP-DML

JEFFERSON COUNTY SHERIFF'S DEPARTMENT
317 Walnut Street
Madison, IN 47250

DAVID THOMAS, Sheriff
317 Walnut Street
Madison, IN 47250

KENNETH JASPER, Jail Commander
317 Walnut Street
Madison, IN 47250

LIBBY HOFFMAN
317 Walnut Street
Madison, IN 47250

JOSH CRAIG
317 Walnut Street
Madison, IN 47250

      Defendants

**COMPLAINT AND REQUEST FOR TRIAL BY JURY**

Now into Court comes Plaintiff, Tammara Todd, in her capacity as personal representative for the estate of Daniel Todd, through undersigned counsel and files this Complaint and Request for Trial by Jury against the Defendants, and alleges as follows:

1

## I. NATURE OF THE ACTION

This action is brought to recover damages based upon:

a. Deprivation of rights protected under 42 U.S.C. §1983, specifically violations of Mr. Todd's rights guaranteed under the Eighth Amendment, extended and guaranteed to him under the Fourteenth Amendment, and supplemental State tort claims.

b. Mr. Todd's representative seeks damages, declaratory judgment, costs and attorney's fees associated with bringing this suit, as well as punitive damages, incurred as a proximate result of the Defendants' actions.

## II. SYNOPSIS

The violation and injury arise from the Jefferson County Sheriff's Department, by and through its employees, Sheriff David Thomas, Jail Commander Kenneth Jasper, Officer Josh Craig and Matron Libby Hoffman allowing Mr. Todd to be physically assaulted by Wes Cron while in the care, custody and control of the Jefferson County Sheriff's Department. As a result of the attack Mr. Todd suffered serious and permanent injury to his left eye; specifically, the eyeball was damaged to the point that it required removal.

## III. JURISDICTION AND VENUE

1. This suit is brought and jurisdiction lies pursuant to 28 U.S.C. §§1331, 1343 and 2201. This suit is a legal action for damages pursuant to 42 U.S.C. §1983 and supplemental State tort claims.

2. This Court has jurisdiction over the supplemental State claims set out herein pursuant to 28 U.S.C. §1367.

3. All Defendants reside, may be found, or transact business within the Southern District of Indiana.

4. This Court has personal jurisdiction over the Defendants who at all times relevant conducted business in Jefferson County, Indiana.

5. Venue is appropriate in this Court because of the proximity of this Court to Jefferson County, Indiana.

## IV. PARTIES

6. Plaintiff Tammara Todd, ("Ms. Todd") is a person of the full age of majority and appointed Personal Representative for the Estate of Daniel Todd. Ms. Todd is a resident of Jeffersonville, Indiana, and at all times relevant, Mr. Todd was incarcerated in the Jefferson County Jail located in Madison, Indiana.

7. Defendant Jefferson County Sheriff's Department, ("Defendant JCSD"), is a governmental entity of Jefferson County Indiana and is tasked with managing and operating the Jefferson County Jail located in Madison, Indiana.

8. Defendant David Thomas, ("Defendant Thomas"), is the elected Sheriff of Jefferson County, and at all times relevant was responsible for matters occurring in the Jefferson County Jail.

9. Defendant Kenneth Jasper, ("Defendant Jasper"), is the jail commander of the Jefferson County Jail, and at all times relevant was responsible for matters occurring in the Jefferson County Jail.

10. Defendant Libby Hoffman, ("Defendant Hoffman"), was at all times relevant a corrections officer in the Jefferson County Jail.

11. Defendant Josh Craig, ("Defendant Craig"), was at all times relevant a corrections officer in the Jefferson County Jail.

## V. FACTS

13. On or about July 17, 2019, Mr. Todd was incarcerated in the Jefferson County Jail and placed in H Block.

14. Prior to his incarceration, Mr. Todd had undergone corneal transplant surgery in both eyes.

15. At all times relevant, and on information and belief, Defendant Hoffman, was the jail matron and responsible for inmate placement within the Jefferson County Jail.

16. On information and belief, on or about August 16, 2019, Defendant Hoffman placed David Turner to H Block. Turner announced as he arrived that he was "there to clean up the block." Defendant Hoffman made Turner the *de facto* pod boss.

17. On or about August 17, 2019, at Turner's request, Defendant Hoffman moved two other inmates, Shawn Monroe and Wes Cron, into the pod.

18. Turner, Monroe and Cron damaged the H Block bathroom skylight in order to exit onto the roof. They used a cinderblock removed from the wall to break loose a four-foot stainless steel handicap rail. Despite all of the banging, no jail personnel investigated the noise; nor did anyone ever enter the bathroom to see what was occurring.

19. Cron and/or others used a table and milk crate moved into the bathroom on which they climbed to exit the hole in the skylight to retrieve contraband that was passed to the inmates.

20. The table and milk crates were in plain sight to any jailer monitoring the pod as they were being transferred in plain sight from the cells to the restroom.

21. Turner, Monroe and Cron told the block that no one better snitch, and that no one was checking out, i.e., requesting to be moved. They further said that there was nowhere anyone could go in the jail without being touched.

22. At one-point Cron advised "Miss. L" (a corrections officer in the Jefferson County Jail) of the hole in the skylight, but he told the block that she could be trusted because he knew her from the street. She never reported the damage.

23. Guards only went to H Block to bring trays and to take inmates to court. The call buttons were broken and the only way to get the guards' attention was to bang and kick the doors.

24. An inmate stopped breathing, and because the call boxes did not work it took over five (5) minutes to get a response after banging and kicking the doors in order to set off alarms to get any response. Mr. Todd provided CPR and saved the inmates life. Mr. Todd was never questioned about the incident and jail administration denied the event occurred.

25. Eventually the damaged skylight was discovered and the inmates in H Block were moved to the gym before being re-housed in F Block. Turner, Monroe and Cron believed Mr. Todd disclosed the skylight. Mr. Todd told them he did not snitch, but he agreed to "check-out" to avoid any trouble and potential injury to his eyes. He told Miss. L that he needed to transfer, but no officers were ever sent to move him.

26. Defendant Hoffman told the inmates moving to F Block that no one checks out.

27. Defendant Hoffman was aware of Mr. Todd's corneal transplants from his medical records, special medical needs and because she is a friend of Mr. Todd's ex-girlfriend.

28. Defendant Hoffman placed or otherwise allowed a known enemy of Mr. Todd, Johnny Grayson, in F Block. Defendant Hoffman was aware of the dangerous situation because in 2016, while she was employed at the Jefferson County Jail, Grayson attacked Mr. Todd while they were both incarcerated in the Jefferson County Jail.

29. Defendant Hoffman told Mr. Todd that he would not be transferred, despite knowing Grayson and Mr. Todd had a violent history and he was a known enemy of Mr. Todd as well as having knowledge of the current issues with Turner, Monroe and Cron.

30. Grayson and Cron threatened Mr. Todd.

31. Mr. Todd overheard Grayson say "it's confirmed we got it ok'ed from the highest power." It is believed that they were told they could attack Mr. Todd.

32. On or about the night of September 16, 2019, C/O's Craig, Miss L and Sgt. Irving were working. Irving and Craig informed the inmates in F Block that since the call buttons were not working, they were not going to lock down for the night. Craig stayed in the block for several hours talking to Cron and trustees. Craig advised Cron that they were getting body cams soon so if the inmates were going to get stuff into the jail, they needed to do it soon.

33. On the morning of September 17, 2019, Craig and Miss L passed breakfast. Cron, dressed in black, went into Mr. Todd's cell while he was out getting his tray. Cron attacked Mr. Todd when he returned striking him in the face with such force, and a potential foreign object, that Mr. Todd could feel the pressure and blood swell in his left eye. Cron then tried to choke Mr. Todd. Mr. Todd was able to get out of his cell and attempted to get help. Two separate call buttons did not work. Mr. Todd banged on the door to set off the alarm. It took approximately five minutes before corrections officers arrived in the pod.

34. Mr. Todd's left eye orb was punctured in the attack.

35. Mr. Todd was taken to Kings Daughter's Hospital. Because of the severity of his injury KDH transferred Mr. Todd by ambulance to Eskanazi Hospital in Indianapolis.

36. Mr. Todd lost complete sight out of his left eye as a result of the attack. Physicians at Eskanazi Hospital attempted surgery in an effort to save the orb, but Mr. Todd was told that the eye was dying and would need to be removed before it caused damage to the right eye.

37. Mr. Todd remained at Eskanazi for approximately one week because the doctors did not believe it was safe for him to return to the jail.

38. When he returned to the jail Mr. Todd was placed in an interview room in the intake area that did not have a sink or toilet. For a bed he was given some poly-fill from half of a matt which had no cover. On multiple occasions Mr. Todd requested to be taken to a bathroom; however, he would have to wait up to an hour after asking before he was finally taken to the bathroom.

39. Despite being prescribed medication to care for his eye, it was not provided to him in an appropriate and timely manner.

40. Mr. Todd continued to experience extreme pain in his left eye, he had depth perception problems causing him to drop things, trouble picking things up, running into things, severe headaches and depression.

41. Mr. Todd suffered permanent physical and emotional harm as a result of the direct actions and inactions of the Jefferson County Sheriff's Department, its deputies and personnel.

42. On or about May 29, 2021, while incarcerated at Westville Correctional in Westville, IN Mr. Todd passed away.

43. Mr. Todd is survived by his wife Sarah F. Todd, and five (5) minor children: ZT – 4yrs., ET – 5 yrs., JT – 11yrs., JT – 12 yrs., KT – 13 yrs.

## VI.  CAUSES OF ACTION

### Causes of Action I through II
### Violations of 42 U.S.C. §1983

Mr. Todd re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 43 of this Complaint, as if those statements were fully articulated within this cause of action.

44. Pursuant to 42 U.S.C. §1983, persons deprived of federal constitutional rights may bring a private action for damages against individual officers and units of local government.

45. In order to prove a claim under 42 U.S.C. §1983, a plaintiff must demonstrate that:

   a. the defendant deprived him of a right secured by the Constitution or any law of the United States, and

   b. the deprivation of that right resulted from the defendant acting under color of law.

46. At all times relevant to this action, all Defendants to this claim were acting under the color of law under their authority, and under color of the statutes, ordinances, regulations, policies, customs, and their acts and/or omissions were conducted within the scope of their official duties or employment.

47. Mr. Todd had, among others, the following clearly established rights at the time of the complained of conduct:

   The right to bodily integrity and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments.

48. Any reasonable law enforcement officer or unit of local government knew or should have known of these rights at the time of the complained of conduct as they were clearly established.

49. Defendants are not entitled to qualified immunity for the complained of conduct.

## Cause of Action I
## Violations of 42 U.S.C. §1983
### As to Defendants JCSD, Thomas and Jasper

Mr. Todd re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 49 of this Complaint, as if those statements were fully articulated within this cause of action.

50. At the time of the complained conduct, Defendants JCSD, Thomas, and Jasper knew or should have known of the rights set forth in paragraph 47 above, as they were clearly established.

51. Defendant JCSD, as custodian of arrestee/detainees is responsible for the operation and management of the Jefferson County Jail and to preserve the life, health and safety of the detainees in its care, custody and control.

52. Defendant Thomas was, at all times relevant, a policymaker for the Jefferson County Sheriff's Department, and in that capacity established policies, procedures, customs, and/or practices for the Jefferson County Sheriff's Department and the Jefferson County Jail.

53. Defendant Jasper was, at all times relevant, a policymaker for the Jefferson County Jail, and in that capacity established policies, procedures, customs, and/or practices for the Jefferson County Jail.

54. Defendants JCSD, Thomas, and Jasper are properly sued directly under 42 U.S.C. §1983 due to their actions and/or inactions, acting in their official capacities, which violated Mr. Todd's Eighth and Fourteenth Amendment rights to bodily integrity and cruel and unusual punishment by their deliberate indifference to arrestees/detainees' rights.

55. Defendants JCSD, Thomas and Jasper are properly sued directly under 42 U.S.C. §1983 for their deliberately indifferent unconstitutional decisions, policies, practices, habits, customs, usages, training and/or derelict supervision, ratification, acquiescence and/or intentional failures which were moving forces in and directly resulted in the complained of constitutional and statutory violations and resulting in injuries to detainees and particularly to Mr. Todd.

56. Defendants JCSD, Thomas and Jasper developed and/or maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Mr. Todd's constitutional and federal rights as set forth herein. These violations resulted from a conscious and/or deliberate choice to follow a course of action from among various available alternatives.

57. Defendants JCSD, Thomas and Jasper created and/or tolerated an atmosphere of lawlessness, and developed and maintained longstanding, department-wide customs, law enforcement related policies, procedures, practices, and/or failed to properly train and/or supervise its deputies in a manner amounting to deliberate indifference to the constitutional rights of Mr. Todd and of the public.

58. Defendants JCSD's, Thomas' and Jasper's toleration of an atmosphere of lawlessness, derelict supervision and intentional failures have resulted in injuries to other detainees in addition to Mr. Todd. Specifically, inmates in the Jefferson County Jail have been injured as a result of corrections officer's creating and/or facilitating the ability for inmates they know intend harm to another inmate the opportunity to attack them.

59. Defendants JCSD, Thomas and Jasper were deliberately indifferent to arrestees' civil rights and particularly Mr. Todd's rights by their failure to promulgate, train, implement, enforce, and/or supervise best practice policies and procedures as to the manner by which jail personnel are to preserve the life, health and safety of a person in their care, custody and control.

60. In their official capacity Defendants Thomas and Jasper provided deliberately indifferent training and/or policy to Defendants Hoffman and Craig. They further provided deliberately indifferent supervision and/or discipline, and they were deliberately indifferent in failing to adopt best practice policies and procedures necessary to preserve the life, health and safety of a person in their care, custody and control and to prevent constitutional violations of Mr. Todd's rights. Their actions and/or inactions were a moving force in and had a direct causal link to the injuries sustained by Mr. Todd at the hands of Defendants Hoffman and Craig.

61. The acts and/or omissions of Defendants JCSD, Thomas, and Jasper, as described herein, intentionally deprived Mr. Todd of his constitutional and statutory rights and caused him other damages.

62. As a direct result of Defendants JCSD, Thomas, and Jasper's unlawful conduct, Mr. Todd suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages. As a further result of these Defendants' unlawful conduct, Mr. Todd incurred special damages, including medical expenses and other special damages related expenses.

63. Mr. Todd's estate is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be

special damages for lien interests.

64. In addition to compensatory, economic, consequential and special damages, Mr. Todd's estate is entitled to punitive damages against each of the individually named Defendants pursuant to 42 U.S.C. § 1983.

## Cause of Action II
## Violations of 42 U.S.C. §1983
## As to Defendants Hoffman and Craig

Mr. Todd re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 64 of this Complaint, as if those statements were fully articulated within this cause of action.

65. At the time of the complained conduct, both Defendants Hoffman and Craig were employed by JCSD and/or the Jefferson County Jail and knew or should have known of the rights set forth in paragraph 47 above, as they were clearly established.

66. Defendants Hoffman and Craig acted with deliberate indifference to Mr. Todd's constitutional rights.

67. Defendants Hoffman and Craig were deliberately indifferent to Mr. Todd's civil rights by their following of policies and/or procedures that were not best practices, or in the alternative, were deliberately indifferent by their failure to follow best practice policies and/or procedures promulgated and implemented by JCSD specifically establishing a duty to exercise reasonable care to preserve the life, health and safety of a person in their care, custody and control.

68. Defendants Hoffman and Craig engaged in shocking actions and/or inactions, as described herein, which were willfully malicious and/or reckless, and deliberately indifferent to Mr. Todd's federally protected constitutional rights.

69. As a proximate result of Defendants Hoffman and Craig unlawful conduct, Mr. Todd suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory, special and punitive damages.

70. As a further result of Defendants Hoffman and Craig unlawful conduct, Mr. Todd incurred special damages, including medically related expenses. Mr. Todd's estate is therefore entitled to money damages pursuant to 42 U.S.C. §1983 to compensate for his injuries and for the violations of his Constitutional and civil rights.

71. Mr. Todd's estate is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

72. In addition to compensatory, economic, consequential and special damages, Mr. Todd's estate is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants were taken maliciously, willfully or with a reckless or wanton disregard of Mr. Todd's constitutional rights.

### Cause of Action III through IV
### Negligence

Mr. Todd re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 72 of this Complaint, as if those statements were fully articulated within this cause of action.

73. The elements of a negligence cause of action consist of:

    a. a duty owed to the plaintiff,
    b. a breach of that duty by the defendant,
    c. which proximately causes,
    d. plaintiff's damages.

74. A duty exists for a law enforcement officer, a custodian of arrestees and/or detainees and a unit of government to exercise reasonable care to preserve the life, health, and safety of the person in custody.

75. As set forth below, the Defendants' breached their duty to Mr. Todd proximately causing his damages.

76. At all times relevant to this action, all Defendants to this claim were acting under the color of law under their authority, and under color of the statutes, ordinances, regulations, policies, customs, and their acts and/or omissions were conducted within the scope of their official duties or employment.

77. At the time of the complained conduct, Defendant JCSD was under a duty to properly train, supervise, investigate and correct improper actions of JCSD deputies.

78. Prior to Mr. Todd being attacked, other inmates in the Jefferson County Jail were injured as a result of corrections officer's creating and/or facilitating the ability for inmates they know intend harm to another inmate the opportunity to attack them.

79. Any reasonable law enforcement officer or unit of government knew or should have known the obligations set forth in the forgoing paragraphs, as they were clearly established.

80. Defendants are not entitled to qualified immunity for the complained conduct.

### Cause of Action III
### Negligence
### As to Defendants JCSD, Thomas and Jasper

Mr. Todd re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 80 of this Complaint, as if those statements were fully articulated within this cause of action.

81. Defendants JCSD, Thomas and Jasper, acting in their official capacities, were negligent in their failure to promulgate, train, implement, enforce, supervise, maintain and/or enforce sufficient best practice policies and/or procedures as to the manner by which jail personnel are to preserve the life, health and safety of a person in the care, custody and control of the Jefferson County Sheriff's Department and the jail resulting in the injuries sustained by Mr. Todd.

82. In their official capacity, Defendants Thomas and Jasper provided negligent training and/or policy to Defendants Hoffman and Craig. They further provided negligent supervision and/or discipline, and they were negligent in failing to adopt best practice policies and/or procedures necessary to prevent harm to arrestees/detainees, particularly Mr. Todd and other individuals. Their actions and/or inactions were a moving force in and had a direct causal link to the injuries sustained by Mr. Todd at the hands of Defendants Hoffman and Craig.

83. Defendants Thomas and Jasper provision of negligent training and/or policies, negligent supervision and/or discipline, and failure to adopt best practice policies and/or procedures necessary to prevent harm to arrestees/detainees has resulted in the harm to other arrestees/detainees in addition to Mr. Todd.

84. As a direct and proximate result of Defendants JCSD's, Thomas' and Jasper's negligence, Mr. Todd suffered serious actual physical and emotional injuries, suffered pain, mental anguish and distress, and was caused economic damages, including but not limited to expenses for hospital and other medical care.

85. Defendants JCSD, Thomas and Jasper were negligent by their failure to promulgate, implement, train, enforce, and/or supervise policies and procedures specifically directing

officers tasked as the control officer on duty and responsible for watching the monitors to notify the guards of any activity out of the ordinary necessitating intervention in the block.

86. Defendants JCSD, Thomas and Jasper were negligent by their failure to maintain the jail in good working order, specifically the call buttons in the pods, to protect the life, health and safety of a person in the care, custody and control of the Jefferson County Sheriff's Department and the jail.

### Cause of Action IV
### Negligence
### As to Defendants Hoffman & Craig

Mr. Todd re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 86 of this Complaint, as if those statements were fully articulated within this cause of action.

87. Defendant Hoffman was negligent by failing to follow policies, procedures, training and/or protocols thus creating a situation during which she knew Mr. Todd was at risk of bodily injury. Specifically, she was negligent when she refused Mr. Todd's transfer request after Grayson, a known enemy of Mr. Todd, was placed in F Block where she knew Mr. Todd was housed.

88. Defendant Hoffman was negligent when she refused to transfer Mr. Todd out of F Block after he was accused of disclosing the broken skylight in H Block, and it was known that Grayson and Cron, known enemies of Mr. Todd, were making threats against him.

89. Defendant Hoffman was negligent by failing to follow policies, procedures, training and/or protocols to properly protect Mr. Todd from being attacked by individuals she knew intended to cause him bodily harm.

90. Defendant Hoffman was negligent and failed to follow policies, procedures, training and/or protocols which would have prevented Cron from gaining access to an area where Mr. Todd was known to be in order that he could be attacked.

91. Defendants Hoffman and Craig were negligent by their failure to follow policies, procedures, and/or training specifically establishing a duty to exercise reasonable care to preserve the life, health and safety of a person in the care, custody and control of the Jefferson County Sheriff's Department and jail.

92. Defendants Hoffman, Craig and currently unknown jail personnel were negligent by their failure to follow policies, procedures, and/or training specifically establishing a duty to properly perform their responsibilities while tasked as the control officer responsible for watching the monitors and notifying the guards of any activity out of the ordinary necessitating intervention in the block.

### Cause of Action V
### Declaratory Relief

Mr. Todd re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 92 of this Complaint, as if those statements were fully articulated within this cause of action.

93. A court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

94. Mr. Todd seeks the Court to declare that Defendant JCSD, by and through its employees, violated his rights under the Eighth and Fourteenth Amendments to body integrity, to be free from cruel and unusual punishment by its failure or refusal to promulgate, implement, maintain, enforce and/or follow best practice policies and procedures

intended to preserve the life, health and safety of a person in the care, custody and control of the Jefferson County Sheriff's Department and jail.

95. Mr. Todd seeks the Court to declare that Defendant JCSD, by and through its employees acting in their official capacities was negligent in its failure to promulgate, implement, maintain and enforce sufficient best practice policies, procedures and/or training of their employees to preserve the life, health and safety of a person in the care, custody and control of the Jefferson County Sheriff's Department and jail.

96. Mr. Todd seeks the Court to declare that Defendant Hoffman, acting in her official and personal capacities, violated his rights under the Eighth and Fourteenth Amendments to body integrity, to be free from cruel and unusual punishment by her failure and/or refusal to follow best practice policies and/or procedures designed to preserve the life, health and safety of a person in the care, custody and control of the Jefferson County Sheriff's Department and jail.

## VII.   GENERAL CAUSATION AND DAMAGES

97. As a direct and proximate result of the foregoing Causes of Action, Mr. Todd suffered irreparable injuries to his physical and emotional health and general well-being.

98. As a direct and proximate result of the foregoing counts, Mr. Todd suffered damages as stated herein, in an amount to be proven at trial, plus an appropriate amount for his emotional pain and suffering, and punitive damages to be determined.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Tammara Todd, Personal Representative for the Estate of Daniel Todd, prays this Court grant relief against the named Defendants under her claims as asserted above in the following manner including but not limited to:

a. An award of full, fair and adequate compensation for all injuries, damages and losses sustained and for costs herein laid out and expended;

b. An award of punitive damages in an amount sufficient to deter Defendants from the conduct complained of herein;

c. Declaratory relief as sought herein;

d. An award of reasonable attorney's fees incurred as a result of this litigation;

e. Pre and Post Judgment interest, and

f. For all other necessary and proper relief in the premises.

### IX. DEMAND FOR JURY

Comes now Plaintiff, Tammara Todd, Personal Representative for the Estate of Daniel Todd, by and through the undersigned counsel, and respectfully requests a trial by jury as to all claims asserted herein.

Dated: September 17, 2021

Respectfully Submitted,
*/s/J. Clayton Culotta*
J. Clayton Culotta, #26733-11
815 E. Market Street
New Albany, IN 47150
Telephone No. (812) 941-8886
Facsimile No. (812) 941-8883
clay@culottalaw.com